```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
HANIFE AYDIN and KIBAR AYDIN,

                          Plaintiffs,

        -against-                              MEMORANDUM & ORDER
                                               10-CV-1907(JS)(AKT)
OPTEUM FINANCIAL SERVICES, LLC, a
subsidiary of Bimini Capital
Management, Inc.,

                          Defendant.
----------------------------------------x
APPEARANCES
For Plaintiffs:    Stephen A. Katz, Esq.
                   Stephen A. Katz, P.C.
                   111 John Street, Suite 800
                   New York, NY 10038

For Defendant:     Edward Michael Keating, III, Esq.
                   Patrick J. McStravick, Esq.
                   Ricci Tyrrell Johnson & Grey, PLLC
                   1628 J.F.K. Blvd., Suite 2000
                   Philadelphia, PA 19603
```

SEYBERT, District Judge:

Currently pending before the Court is defendant Opteum Financial Services, LLC, a subsidiary of Bimini Capital Management, Inc.'s ("Defendant") motion for summary judgment. For the following reasons, Defendant's motion is GRANTED.

BACKGROUND

I. Factual Background[1]

At some point in time, plaintiffs Hanife Aydin ("Mrs. Aydin") and Kibar Aydin ("Mr. Aydin," and together, "Plaintiffs") decided to refinance their home at 703 Outlook Avenue, North Babylon, New York. (Def.'s 56.1 Stmt. ¶ 1.) On May 2, 2005, Mrs. Aydin wrote a letter to Defendant stating that she wished to refinance the property in order to consolidate the first and second loans already out on the property, pay off some debts, make home improvements, and invest. (Def.'s 56.1 Stmt. ¶ 2.) According to Defendants, at that time the home was valued at $440,000 and Plaintiffs were required to make monthly payments of $3,239.28[2] before the refinancing. (Def.'s 56.1 Stmt. ¶¶ 4, 7; Pls.' 56.1 Counterstmt. ¶ 4.) Mrs. Aydin also identified $41,488 in personal debt, requiring monthly payments of $824. (Def.'s 56.1 Stmt. ¶ 8.)

On May 18, 2005, Plaintiffs refinanced the property with Defendant. (Def.'s 56.1 Stmt. ¶ 3.) The refinancing created a single mortgage for $352,000, which paid off the

---

[1] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statement ("56.1 Stmt.") and Counterstatement ("56.1 Counterstmt.") and the evidence in support. Where relevant, the Court has noted specific factual disputes.

[2] Although Plaintiffs dispute the exact accuracy of this amount, they do not dispute that there were two loans requiring monthly payments in approximately this amount. (Pls.' 56.1 Counterstmt. ¶¶ 6-7.)

2

outstanding mortgages of $276,212.75 and reduced the monthly payments from $3,239.28 to $2,054.18. (Def.'s 56.1 Stmt. ¶ 11.) Furthermore, according to Defendant, Mrs. Aydin left the table with $58,717.75 (Def.'s 56.1 Stmt. ¶ 12), which was enough to pay off Mrs. Aydin's personal debt with $17,000 left over. (Def.'s 56.1 Stmt. ¶ 13.) The refinance was a conventional 30 year fixed-rate mortgage, with a fair and competitive rate of 5.75% and no adjustable rate mortgage ("ARM"), balloon payment, or additional home equity line of credit ("HELOC"). (Def.'s 56.1 Stmt. ¶ 16.)

The loan application signed by Mrs. Aydin lists her income as $7,840 per month. (Def.'s 56.1 Stmt. ¶ 18.) According to Plaintiffs, Mrs. Aydin signed many documents at the time of the closing without time to read them, and therefore "she should not be held to the false statement of her income . . . ." (Pls.' 56.1 Counterstmt. ¶ 19.)

II. Procedural Background

Plaintiffs originally commenced this action on April 28, 2010. On September 6, 2010, Plaintiffs filed an Amended Complaint against Defendant[3] alleging claims for: (1) violation of New York's Deceptive Practices Act; (2) fraud in the inducement; (3) violation of the Credit Repair Organizations Act

---

[3] Plaintiffs also brought suit against Everhome Mortgage Company, Inc., but the parties stipulated to its dismissal in December 2010. (See Docket Entries 13, 15.)

3

("CROA"); (4) violation of the Equal Credit Opportunity Act ("ECOA"); (5) violation of the Fair Housing Act; and (6) deprivation of civil rights in violation of 42 U.S.C. §§ 1981, 1982, and 1985. Although Plaintiffs sought to amend their Complaint again, such request was denied. (See Docket Entries 19, 36.)

On November 18, 2011, Defendant properly moved before the Court for a pre-motion conference in anticipation of a motion for summary judgment. (Docket Entry 40.) The Court held a hearing on January 4, 2012 and set a briefing schedule for the motion. (Docket Entry 43.) Shortly thereafter, however, Plaintiffs filed a suggestion of bankruptcy and moved to stay. (Docket Entries 44-45.) The Court granted the stay pending resolution/discharge of the bankruptcy proceedings. (Docket Entry 46.) The stay was lifted on November 15, 2013 and Defendant's motion for summary judgment is now pending before the Court. (Docket Entry 48.)

## DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the merits of Defendant's motion.

I. Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to

any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations

do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

II. Analysis

Defendants move for summary judgment on each of Plaintiffs' six claims. They argue, inter alia, that: (1) Plaintiffs' claims pursuant to New York's Deceptive Practices Act; the ECOA; the Fair Housing Act; and Sections 1981, 1982, and 1985 are barred by the applicable statutes of limitations; and (2) Plaintiffs have failed to produce reliable evidence to establish their claims for fraud in the inducement and violation of the CROA. Initially, the Court notes that Plaintiffs do not oppose summary judgment on their claims pursuant to New York's Deceptive Practices Act, the ECOA, the Fair Housing Act, and Sections 1981, 1982, and 1985. (Pls.' Opp. Br., Docket Entry 52, at 1.) Given the statutes of limitations on each of the claims, that the facts involve events in 2005, that Plaintiffs did not file the action until 2010, and that Plaintiffs do not argue for any equitable tolling, Defendant's motion for summary judgment on these claims is GRANTED. Plaintiffs' claims pursuant to New York's Deceptive Practices Act, the ECOA, the Fair Housing Act, and Sections 1981, 1982, and 1985 are therefore DISMISSED WITH PREJUDICE.

Thus, the Court turns to Plaintiffs' claims for fraud in the inducement and violation of the CROA, each of which it will address in turn.

A. Fraud in the Inducement

Defendant asserts that Plaintiffs cannot sufficiently establish their fraud in the inducement claim. Plaintiffs counter that they relied on Defendant's decision to lend to Mrs. Aydin as constituting a determination that she could afford the payments, that precedent supports their position, and that Plaintiffs have been damaged. (Pls.' Opp. Br. at 4.) The Court agrees with Defendant.

"To state a claim for fraud in the inducement, the party must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [plaintiffs]; and (iv) resulting damages." Silverman v. Household Finance Realty Corp. of N.Y., --- F. Supp. 2d ----, 2013 WL 4039381, at *5 (E.D.N.Y. Aug. 5, 2013); see also Karakus v. Wells Fargo Bank, N.A., 941 F. Supp. 2d 318, 343-44 (E.D.N.Y. 2013) (plaintiffs must demonstrate "the basic elements of fraud, namely [1] a representation of material fact, [2] the falsity of that representation, [3] knowledge by the party who made the representation that it was false when made, [4] justifiable reliance by the plaintiff, and [5] resulting injury." (internal

7

quotation marks and citations omitted)). Defendant argues that the instant case is similar to Hayrioglu v. Granite Capital Funding, LLC, 794 F. Supp. 2d 405 (E.D.N.Y. 2011). (Def.'s Br., Docket Entry 49-5, at 11.) Specifically, Defendant maintains that Plaintiffs could not have relied on misrepresentations regarding Mrs. Aydin's income because they did not read the loan documents, Plaintiffs cannot have reasonably relied on misrepresentations regarding Mrs. Aydin's income, and Plaintiffs cannot show damages.

The Court agrees that this case shares many similarities with Haryrioglu. There, the plaintiff asserted that defendant "foist[ed]" a debt upon him that he could not afford, that he signed the documents but never knew their content, "that the misstatement of his monthly income was generated solely by the defendants," and that he understood defendant's decision to issue him a loan "to be an affirmative indication that he could afford to repay the debt he was assuming." Id. at 409. In Haryrioglu, the Court found, in part, that plaintiff could not have relied upon statements regarding his income that he did not know existed. Id. at 413.

Even putting that question aside, however, here, as in Haryrioglu, Mrs. Aydin was fully aware of her monthly income and cannot have reasonably relied upon a misstatement that grossly exaggerated her own earnings. Id. at 413 ("[E]ven if the

8

plaintiff was aware of the statement, it certainly would not have been reasonable for the plaintiff to rely on [defendant's] claim that his monthly income was approximately $7,000 more than he believed it to be."). If, as Mrs. Aydin claims, her monthly income was $1,042.50, she cannot be said to <u>reasonably</u> have relied on a statement that her monthly income was $7,840 and it would have been obvious that mortgage payments of over $1,000 per month would exceed her income. (Def.'s 56.1 Stmt. ¶¶ 18, 22.) <u>See</u> <u>Knox v. Countrywide Bank</u>, --- F. Supp. 2d ----, 2014 WL 946635, at *6 (E.D.N.Y. Mar. 12, 2014) ("It is unreasonable to rely on a lender's misstatement of one's own income, which one knows to be false."). This is particularly so given that Defendant did not conceal the terms or relevant information. <u>See</u> <u>Utreras v. Aegis Funding Corp.</u>, No. 13-CV-0291, 2013 WL 789614, at *3 (E.D.N.Y. Mar. 1, 2013) (given that defendants did not misrepresent the size or terms of the loan, the plaintiff "would have been in the best position to know the amount she was able to pay per month for a mortgage and whether that amount was sufficient to make her monthly payments under the terms of the loan").

The same is true, then, for Defendant's alleged misrepresentation that Mrs. Aydin could afford to repay the loan. As in <u>Haryrioglu</u>, Mrs. Aydin does not dispute that she signed all of the loan application materials and relevant

9

documents.  Haryrioglu, 794 F. Supp. 2d at 414.  This is significant in and of itself, even irrespective of Plaintiffs' allegation that they did not have enough time to read the documents.  See Marciano v. DCH Auto Grp., --- F. Supp. 2d ----, 2014 WL 1612976, at *6 (S.D.N.Y. Mar. 31, 2014) ("Plaintiff's contention that she did not read the entire Arbitration Agreement, by itself, does not create a material factual dispute, because a party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." (internal quotation marks and citation omitted)); Karakus, 941 F. Supp. 2d at 345-46 (finding that the plaintiff's claim that she did not have time to read the documents was unavailing because she was capable of reading the documents, she could have hired an attorney, and she could have requested an adjournment of the closing).  In any event, "a few relatively simple mathematical calculations would have revealed" that the payment obligations exceeded income.  Haryrioglu, 794 F. Supp. 2d at 414; see also Karakus, 941 F. Supp. 2d at 346-47 ("To now bring an action for fraud against Wells Fargo because it did not reject their loan application smacks of chutzpah.").

Accordingly, Defendant's motion for summary judgment on Plaintiffs' fraud in the inducement claims is GRANTED.

B. CROA

Next, Defendant challenges Plaintiffs' claim for Defendant's violation of the CROA primarily because Defendant cannot be held liable for an alleged false statement made to itself. Plaintiff counters that Defendant is liable because the CROA prohibits any "person" from making a false statement about a consumer's creditworthiness, not just a credit repair organization, and because a lender can submit a false loan application to itself and still be liable. Again, the Court agrees with Defendant.

"In relevant part, CROA provides that '[n]o person may . . . make any statement . . . which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . any person . . . to whom the consumer has applied or is applying for an extension of credit.'" Karakus, 941 F. Supp. 2d at 336 (quoting 15 U.S.C. § 1679b(a)(1) (alterations in original)). The CROA's stated purposes are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
>
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

Id.; accord Hayrioglu, 794 F. Supp. 2d at 415.

Here, Defendant contends that, even assuming that it made an untrue or misleading statement with respect to Mrs. Aydin's creditworthiness, such a statement was made to itself, and therefore it is not actionable under the CROA. Plaintiffs begin their opposition by arguing that Defendant can be held liable because the CROA refers to any "person," not just a credit repair organization. (Pls.' Opp. Br. at 10-12.) The question of whether Defendant was "functioning" as a credit repair organization or whether it can indeed be held liable under the CROA is a difficult one that has not definitively been decided by courts in this Circuit. Hayrioglu, 794 F. Supp. 2d at 414-15 ("Federal district courts have disagreed as to whether Section 1679b(a) of the CROA applies to lending institutions . . . . In the Court's view, the statute is ambiguous on this issue." (internal citations omitted)).

The Court need not decide this question, however, because even if Defendant could be held liable in this respect, courts have made clear that an alleged misstatement to itself is not actionable. See, e.g., Kahraman v. Countrywide Home Loans, Inc., 886 F. Supp. 2d 114, 124 (E.D.N.Y. 2012) ("This Court agrees that overstating an applicant's income as part of an internal loan approval process does not alone constitute a violation of 15 U.S.C. § 1679b(a)(1)."); Hayrioglu, 794 F. Supp. 3d at 415. Plaintiffs cite to Poskin v. TD Banknorth, N.A., 687

12

F. Supp. 2d 530 (W.D. Pa. 2009) for the proposition that a lender can be held liable for a statement to itself under the CROA. (Pls.' Opp. Br. at 13.) However, other courts, in this Circuit, have flatly rejected this very same argument, distinguishing Poskin and noting that it did not speak directly to this issue. See Karakus, 941 F. Supp. 2d at 338 ("While plaintiffs assert that Poskin supports their position, defendant correctly notes that the issue was never properly raised in that case."); Hayrioglu, 794 F. Supp. 2d at 415 (The Poskin "court did not address the issue directly, and to the extent that its holding is inconsistent with the Court's present holding, the Court finds that decision not to be persuasive."). The precedent is clear.

Moreover, contrary to Plaintiffs' contention, a determination that Defendant cannot be held liable under this factual scenario accords with--rather than contradicts--the stated purposes of the CROA. In fact, a false statement to one's self is "inconsistent with the description of the statute's purpose." Hayrioglu, 794 F. Supp. 2d at 415. While Plaintiffs assert that the misstatement was intended for others to read, a prohibition on misstatements to one's self does not necessarily protect the buyer or the public. Karakus, 941 F. Supp. 2d at 338 ("It is hard, in short, to accept that Congress intended CROA to impose liability on an entity based on purely

internal communications. Any other interpretation of the statute would defy common sense . . . ."). Accordingly, Defendant's motion for summary judgment on Plaintiffs' CROA claim is GRANTED.

As the Court has granted Defendant's motion for summary judgment on all of Plaintiffs' claims, it will not consider Defendant's additional arguments.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiffs' Amended Complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: June 10, 2014
      Central Islip, NY